IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

```
WINES, VINES AND CORKS, LLC,    )
                                )
            Plaintiff,          )          8:14CV82
                                )
        v.                      )
                                )
FIRST NATIONAL OF NEBRASKA,     )     MEMORANDUM AND ORDER
INC., FIRST NATIONAL BANK OF    )
OMAHA, FIRST NATIONAL           )
MERCHANT SOLUTIONS, LLC, and    )
FRONTSTREAM PAYMENTS, INC.,     )
                                )
            Defendants.         )
_____ )
```

This matter is before the Court on motions to dismiss
filed by defendant First National Merchant Solutions (Filing No.
23), defendants First National of Nebraska, Inc. and First
National Bank of Omaha (Filing No. 25), and defendant FrontStream
Payments, Inc. (Filing No. 27).  This is a purported class action
for damages and injunctive relief for breach of contract,
violations of the Nebraska Consumer Protection Act, Neb. Rev.
Stat. § 59-1601 et seq. ("CPA"), the Nebraska Uniform Deceptive
Trade Practices Act, Neb. Rev. Stat. § 87-302 (5), (7), and (9)

("UDTPA"),[1] and negligence.  This action was removed from state court under 28 U.S.C. § 1446 and § 1453(b) based upon diversity of citizenship under § 1332, and on the Class Action Fairness Act of 2005 (CAFA), codified at 28 U.S.C. § 1332(d).

I.    FACTS

The plaintiff is a Kentucky limited liability company with its principal place of business in Fayette County, Kentucky. The defendants are a Nebraska Bank, its credit card processing subsidiary and a Tennessee credit card processing company.  In

---

[1] The pertinent portions of that statute provide that it is a deceptive trade practice if a person or entity, in the course of its business or profession:

> (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

> (7) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

> (9) Advertises goods or services with intent not to sell them as advertised or advertises the price in any manner calculated or tending to mislead or in any way deceive a person. . . .

Neb. Rev. Stat. § 87-302 (5), (7), and (9).

-2-

its complaint, the plaintiff alleges that it has a credit card processing account with defendants, pursuant to a written agreement (Filing No. 1, Notice of Removal, Ex. A, Complaint at 2). It alleges that a data security breach occurred at the defendants' premises, and credit card processing data was compromised (*Id.* at 3). It alleges that as a result of the breach, multiple unauthorized credit card transactions were processed through the plaintiff's account and fees for those transactions were withdrawn from the plaintiff's account (*Id.*). It alleges the defendants' actions were not allowed under the terms of the agreement and asserts that the direct withdrawal of fees from merchant accounts for unauthorized purchases and the defendants' refusal to refund the fees is an unfair or deceptive act under the UDTPA and is a restraint of trade or commerce under the CPA (*Id.* at 4-7). It also alleges the defendants' violations have an impact of great or general importance to the public (*Id.* at 7). Further, it alleges that the defendants' failure to adequately secure and protect the plaintiff and potential class members' account information from theft, collection, and misuse by third parties was a breach of the defendants' duty of due care and constituted negligence (*Id.* at 8-9). It seeks damages and an injunction preventing further violations of the Nebraska CPA and the UDTPA by the defendants (*Id.* at 10).

The plaintiff asserts these claims on its own behalf and on behalf of a class of persons or entities who have entered into similar credit card processing agreements with the defendants and whose accounts had unauthorized transactions processed and fees assessed as a result of the data security breach (*Id.* at 4).  It alleges that it reasonably believes the class consists of "hundreds if not thousands of geographically dispersed people and entities," whose "names and addresses are readily identifiable in the defendants' records."  (*Id.*).

Although the plaintiff does not allege a specific dollar amount with respect to the damages for the unauthorized processing at issue, the defendants submitted evidence in connection with their notice of removal that shows the plaintiff was assessed a total of $16,660.84 in processing fees, including $11,661.60 in authorization fees, for the months of February, March, April, and May of 2013 (Filing No. 1, Notice of Removal, Ex. B, Affidavit of Geanie Bless-Mixan).  The defendants assert, and the plaintiff does not dispute, that the Court has original diversity jurisdiction over this class action because the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, a member of the plaintiff class is a citizen of a different state than any defendant; and the prospective class

-4-

includes more than 100 members (*Id.*, Notice of Removal at 2; *see* 28 U.S.C. § 1332(d)(2) & (d)(5)).

In their motions to dismiss, the defendants argue that all four claims in the complaint rest on a conclusory allegation of a data breach that has no factual support.  They further argue that the state law deceptive trade practices, consumer protection, and negligence claims are barred by the "economic loss rule" and are subject to dismissal.  They argue that the duty underlying the alleged torts is based on the parties' contractual relationship.

II.  LAW

The Court has an obligation to consider sua sponte whether it has subject matter jurisdiction over a case.  *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014).  The Court "must raise jurisdictional issues 'when there is an indication that jurisdiction is lacking, even if the parties concede the issue.'"  *Id.* (quoting *Thomas v. Basham*, 931 F.2d 521, 523 (8th Cir. 1991)).  Under CAFA, federal courts have jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 in the aggregate; there is minimal (as opposed to complete) diversity among the parties, i.e., any class member and any defendant are citizens of different states; and there are at least 100 members in the class.  *Grawitch v.*

*Charter Comms., Inc.,* 750 F.3d 956, 959 (8th Cir. 2014).  A party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence.  *Id.*  Under the preponderance standard, the jurisdictional fact is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are.  *Id.*  The Court's jurisdiction is measured at the time of removal.  *Id.* Once the proponent of federal jurisdiction has plausibly explained how the stakes exceed $5 million, as required to satisfy amount in controversy under Class Action Fairness Act (CAFA), then the removed case belongs in federal court unless it is legally impossible for the plaintiff to recover that much. *Raskas v. Johnson & Johnson,* 719 F.3d 884, 888 (8th Cir. 2013); *see* 28 U.S.C. § 1332(d).

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).  In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's

-6-

obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *Twombly* is based on the principles that (1) a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*. at 677-78.

Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Id.* at 679. Under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Accordingly, the Supreme Court has prescribed a "two-pronged approach" for evaluating Rule 12(b)(6) challenges. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court should divide the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal allegations

should be disregarded.  *Id.*  Second, the factual allegations must be parsed for facial plausibility.  *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 677 (stating that the plausibility standard does not require a probability, but asks for more than a sheer possibility that a defendant has acted unlawfully).  A court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim.  *Twombly*, 550 U.S. at 558, 556.  When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *Twombly*, 550 U.S. at 558; *Iqbal*, 556 U.S. at 679.

Under Nebraska law, in order to recover for a breach of contract, the plaintiff must prove a promise, the breach of that promise, and damages resulting from that breach.  *K.M.H. v. Lutheran General Hosp.*, 230 Neb. 269, 271, 431 N.W.2d 606, 608 (1988) (citing *Dep't of Banking, Receiver v. Wilken*, 217 Neb. 796, 799, 352 N.W.2d 145, 147 (1984)).  To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between

-8-

the parties to the contract. *Gerhold Concrete Co. v. St. Paul Fire & Marine Ins.*, 269 Neb. 692, 700, 695 N.W.2d 665, 672 (2005) (citing *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001)).

In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages. *Latzel* v. *Bartek*, 288 Neb. 1, 12, 846 N.W.2d 153, 162 (2014) (citing *Martensen v. Rejda Bros.*, 283 Neb. 279, 808 N.W.2d 855 (2012)). As a general matter, the existence of a duty serves as a legal conclusion that an actor must exercise that degree of care as would be exercised by a reasonable person under the circumstances. *See id.*, 846 N.W.2d at 162-63 (citing *A.W. v. Lancaster Cnty. Sch. Dist. No. 1*, 280 Neb. 205, 210-11, 784 N.W.2d 907, 913 (2010) (adopting Restatement (Third) of Torts with respect to the first two elements of a negligence action -- a legal duty owed by the defendant to the plaintiff and a breach of such duty and stating "[t]he question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation," and "it is for the fact finder to determine, on the facts of each individual case, whether or not the evidence establishes a breach of that duty.")).

-9-

The Nebraska UDTPA "provides that a person has engaged in a deceptive trade practice when, in the course of business, he or she '[r]epresents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have.'" *State ex rel. Stenberg v. Consumer's Choice Foods, Inc.*, 276 Neb. 481, 490, 755 N.W.2d 583, 591-92 (2008) (quoting Neb. Rev. Stat. § 87-302(a)(5)).  Thus, to establish a violation of the UDTPA, there must have been a representation regarding the nature of goods or services and the representation must have been for characteristics or benefits that the goods or services did not have.  *Id.* at 592, 755 N.W.2d at 592.  The UDTPA is intended to provide "protection from deception for both consumers and competitors." *Richdale Dev. Co. v. McNeil Co., Inc.*, 244 Neb. 694, 705, 508 N.W.2d 853, 860 (1993).  The UDTPA prohibits a broad panoply of deceptive trade practices.  *Id.*  However, it does not provide a private right of action for damages.  Neb. Rev. Stat. § 87-303.  "By its own terms, [UDTPA] § 87-303(a) provides only for equitable relief consistent with general principles of equity." *Reinbrecht v. Walgreen Co.*, 16 Neb. App. 108, 113, 742 N.W.2d 243, 247-48 (Neb. Ct. App. 2007) (stating that the UDTPA provides relief from future damage, not past damage and dismissing claim for failure

to allege or prove the likelihood of future harm sufficient to assert a viable claim for injunctive relief).

The Nebraska CPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Bruno v. Sunglass Hut Trading Corp.,* No. A-07-745, 2008 WL 2277550, *3 (Neb. Ct. App. June 3, 2008) (citing Neb. Rev. Stat. § 59-1602 (Reissue 2004)). Trade or commerce is defined as "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska." *Id.* (citing Neb. Rev. Stat. § 59-1601(2)). The CPA only applies to unfair or deceptive practices that affect the public interest. *See id.* (citing *Eicher v. Mid Am. Fin. Invest. Corp.,* 275 Neb. 462, 473-74, 748 N.W.2d 1, 12 (2008). The CPA is not available to redress a private wrong where the public interest is unaffected. *Nelson v. Lusterstone Surfacing Co.,* 258 Neb. 678, 605 N.W.2d 136 (2000). Also, allegations of injuries that are derivative and remote will fail to state a claim under Nebraska's Consumer Protection Act. *Kanne v. Visa U.S.A. Inc.,* 272 Neb. 489, 500-01, 723 N.W.2d 293, 302 (2006) (involving a derivative antitrust claim). In order to prove an unfair practice under the CPA when merchants have entered into a contract, the plaintiff must prove that the practice either

"(1) fell within some common-law, statutory, or other established concept of unfairness or (2) was immoral, unethical, oppressive, or unscrupulous." *Consumer's Choice Foods,* 276 Neb. at 489, 755 N.W.2d at 591 (2008) (quoting *Raad v. Wal-Mart Stores, Inc.*, 13 F. Supp. 2d 1003, 1014 (D. Neb. 1998)). "In addition, the plaintiff must 'show that the promisor had no intent to perform the promise when it was made' and the plaintiff must 'prove that the practice possessed the tendency or capacity to mislead, or created the likelihood of deception.'" *Id.*, 755 N.W.2d at 591 (quoting *Raad*, 13 F. Supp. 2d at 1014)).

The general economic loss doctrine is a "judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Lesiak v. Cent. Valley Agric. Co-op., Inc.*, 283 Neb. 103, 118-19, 808 N.W.2d 67, 80 (2012). It precludes tort remedies only where the damages are limited to economic losses and where either: (1) a defective product caused the damage or (2) the duty which was allegedly breached arose solely from the contractual relationship between the parties. *Id.* at 120, 808 N.W.2d at 81. Economic losses are defined as commercial losses, unaccompanied by personal injury or other property damage. *Id.*, 808 N.W.2d at 80 (footnote omitted). Where only economic loss is suffered and the alleged breach is of only a

-12-

contractual duty, then the action should be in contract rather than in tort.  *Id.* at 123, 808 N.W.2d at 83 (affirming the continued validity of the doctrine in the context of products liability).  Fraud and deceit provide a ground for recovery that is independent of the contract.  *Zawaideh v. Nebraska Dep't of Health and Human Servs. Regulation and Licensure*, 285 Neb. 48, 55-56, 825 N.W.2d 204, 212 (2013).  A plaintiff may plead alternative and inconsistent legal causes of action arising out of the same facts.  *See* Fed. R. Civ. P. 8(d)(2); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

III. DISCUSSION

          The Court first finds it has subject matter jurisdiction.  The plaintiff has alleged a nationwide class consisting of "hundreds, if not thousands of geographically dispersed" account holders, and the defendants do not take issue with that allegation.  The defendants have shown that the plaintiff's actual damages for allegedly unauthorized fees are in the neighborhood of $12,000 to $16,000.  The plaintiff also seeks consequential damages.  Assuming that other potential class members suffered a similar loss, a jury could conclude that the class suffered damages of more than $5 million, even if each individual class members' fees were minimal.  The Court thus

-13-

finds the defendants have met their burden of showing that the amount in controversy exceeds CAFA's $5 million jurisdictional threshold.

The Court next finds the defendants' motions to dismiss for failure to state a claim for relief should be denied.  In its complaint, the plaintiff alleges that a data breach occurred, resulting in damages to the plaintiff, and, ostensibly to the class.  That is a factual allegation that the Court must assume is true.  The Court finds the complaint contains enough factual matter (taken as true) to suggest that discovery will reveal evidence of the elements of the claim.  The factual allegations involve information that is in the hands of the defendants.

The plaintiff adequately states a state-law claim for breach of contract.  The breach of contract claim is premised, in part, on an assertion that the assessment of fees is not authorized by the contract.  The plaintiff has adequately pled the existence of a contract and the breach.

Accepting the factual allegation of a data breach, the plaintiff has also stated a claim for negligence.  It alleges the defendants' failure to use reasonable care and conform to industry standards in securing and protect the plaintiff's and potential class members' account information from theft,

-14-

collection, or misuse by third parties was a breach of the duty of due care.

The plaintiff has also adequately stated a claim under the UDTPA in alleging the defendants misrepresented the nature of the goods or services they sold.  Because the plaintiff seeks an injunction, its UDTPA claim is not subject to dismissal, although it may not recover damages under the Act.  Similarly, the allegations of the plaintiff's complaint are sufficient to state a consumer protection claim.  It alleges that the defendants' alleged violations affect the public interest.

The Court finds that the defendants' arguments in connection with the economic loss doctrine are misplaced and defendants are not entitled to prevail on that basis.  The economic loss doctrine has no applicability to the present case. The doctrine serves to weed out "cases involving nothing more than an allegedly negligent failure to perform a purely contractual duty -- a duty that would not otherwise exist." *Lesiak*, 283 Neb. at 122, 808 N.W.2d at 82 (citing Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66 WASH. & LEE L. REV. 523, 567 (2009)).  In contrast, this case involves claims that the defendants' conduct, in addition to breaching the terms of a contract, also breached duties and violated statutes that are independent of the contract.  There

-15-

are duties and standards imposed on banks and credit card
processing companies that are supplemental to the duties imposed
in the contract.  Under the Federal Rules, the plaintiff may
plead alternative legal theories at this stage of the litigation.
The Court finds that the defendants' motions to dismiss, to the
extent they are based on the economic loss doctrine, should also
be denied.  Accordingly,

    IT IS ORDERED that defendants' motions to dismiss are
denied.

    DATED this 20th day of August, 2014.

                        BY THE COURT:

                        /s/ Lyle E. Strom
                        _____
                        LYLE E. STROM, Senior Judge
                        United States District Court